UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SANDRA DeVINE, | ) |
| Plaintiff, | ) Case No. 18 C 1264 |
| | ) Consolidated with 19 C 166 for discovery |
| v. | ) Judge Sharon Johnson Coleman |
| | ) Magistrate Judge Gabriel A. Fuentes |
| XPO LOGISTICS FREIGHT and ELVIS FIGUEROA, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

This matter is before the magistrate judge on referral from the District Court for supervision of discovery. (D.E. 17, 39.) The district judge has consolidated this matter, for purposes of discovery, with *Liliana Morales v. XPO Logistics Freight, et al.*, No. 19 C 166, also pending in this Court. (D.E. 50.) The two cases are before the Court on removal jurisdiction based on diversity of citizenship. This order imposes a protocol for the depositions of medical professionals or treatment providers in the current environment, which includes a public health emergency amid community spread of COVID-19.

### Introduction

According to the parties' most recent status report (D.E. 52): The two plaintiffs, Sandra DeVine and Liliana Morales, allege that on December 9, 2016, they were injured in a motor vehicle collision at or near 143rd Street and Route 59 in Plainfield, Illinois. Plaintiffs allege that the motor vehicle in which they were located was stopped when it was struck from behind by the vehicle driven by Defendant Elvis Figueroa, who was operating a semi-tractor trailer for Defendant XPO Logistics, Inc. at the time of the collision. Plaintiff DeVine alleges injuries to her neck, left hip,

left shoulder, and low back. She underwent a cervical fusion and a left hip labral tear repair. She has a prescription for surgery to repair a torn rotator cuff in her left shoulder as well as a prescription for surgery known as a L5-S1 microdiscectomy for her lower back. Plaintiff Morales alleges injuries to her cervical spine and left shoulder, which she says has required surgery. Defendants have denied liability. DeVine has stated that her medical bills are in excess of $500,000.00 and are expected to increase significantly with the prospect of future surgeries. The Court could not locate in the public file a statement by Morales about her alleged medical expenses.

On January 9, 2020, the Court set an April 1, 2020 discovery cutoff (D.E. 64), which was anticipated to allow the parties sufficient time to complete the depositions of various medical providers and treaters in the consolidated cases. The parties subsequently reported that they have been attempting to schedule these medical treater depositions (D.E. 68, 71), and in the meantime, they have contemplated how much discovery they need before they will be prepared to engage in a settlement conference. (D.E. 66, 71.) On March 13, 2020, after a pre-settlement telephonic status hearing, the magistrate judge expressed a concern about the amount of additional medical provider discovery the parties had ahead of them. (D.E. 71.) More specifically, plaintiffs disclosed on March 13 that they expected a need to depose six medical treaters in the Morales matter, and plaintiffs' counsel disclosed that the six treaters had retained outside counsel, likely extending the amount of time needed to secure deposition dates. In the meantime, this Court, per the Chief Judge of the Court, issued an order extending all deadlines in civil matters by 21 days in response to the COVID-19 public health emergency. *See Amended General Order* No. 20-0012 (N.D. Ill. March 16, 2020).

The fact that the six treaters whose depositions are sought in this matter have retained independent counsel to negotiate deposition dates (or possibly to resist any obligation to appear

for deposition) is not surprising, given the scope and unpredictability of the fast-moving public health crisis associated with COVID-19.

**Discussion**

Federal Rule of Civil Procedure 26(b)(1), as amended in 2015, provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). In addition, Rule 45 authorizes courts to quash or modify a subpoena where compliance with it would subject a person to "undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii), (iv). The rules also direct that courts manage civil litigation in a manner that promotes, the just, speedy, and inexpensive determination of the matter. Fed. R. Civ. P. 1. Accordingly, district courts have wide discretion in managing civil discovery. *Geiger v. Aetna Life Ins. Co.*, 845 F.3d 357, 365 (7th Cir. 2017).

The current COVID-19 public health emergency takes courts, litigants, and medical treater witnesses into uncharted territory in terms of managing discovery in a time of a public health emergency. The Governor of Illinois has closed public schools through at least March 30, 2020. Various elected officials and public health officials have cautioned against gathering in groups of 250 or more, then 50 or more, then 10 or more – over the next few weeks or months. This Court issued its March 16, 2020 Amended General Order effectively pausing civil litigation in this judicial district for 21 days. In the meantime, the Court takes judicial notice of the multiple reports, warnings, and other public statements about the impact that community spread of COVID-19 could have on medical care providers, doctors, hospitals, and so on. The concern is that health care

3

providers could become overwhelmed. There is also substantial anecdotal evidence that physicians and their staff are currently engaged in planning for the spread of the virus, even if they may not yet be engaged in actually providing care to persons infected by COVID-19.

In other words, the medical community is very, very busy right now, and likely will be busy for weeks or months to come. And these doctors and nurses are busy preparing to take care of sick people. Soon they may be taking care of more sick people than they can handle. We all hope that conditions will not overwhelm our health care system, but at this writing, we do not know how significant the impact will be. Even if the system is not overwhelmed, it may be strained to at or near its limits. Physicians who do not normally practice emergency care may find themselves deployed to emergency rooms. Physicians who might never practice emergency medicine may find themselves immersed in logistical planning or other essential services. It is reasonable for all of us to expect that at this moment and at least for the next few weeks and possibly longer, the situation at hospitals and medical offices will be all hands on deck.[1]

All hands cannot be on deck if some of them are at a law office sitting for a deposition in a tort lawsuit.

---

[1] Lindsey Tanner, *US hospitals brace for 'tremendous strain' from new virus*, A.P. News (Mar. 13, 2020), https://apnews.com/6c9b9686c4af21b9984341d330073979 ("U.S. hospitals are setting up circus-like triage tents, calling doctors out of retirement, guarding their supplies of face masks and making plans to cancel elective surgery as they brace for an expected onslaught of coronavirus patients."); Jason Lemon, *New York Governor Asks Retired Doctors and Nurses to Sign Up and Be On Call Amid Coronovirus Crisis*, Newsweek (Mar. 17, 2020), https://www.newsweek.com/new-york-governor-asks-retired-doctors-nurses-sign-call-amid-coronavirus-crisis-1492825; John Daley, *Like Emergency Medicine Special Forces, Colorado Doctors and Nurses Get Ready To Combat Coronavirus* (Mar. 15, 2020), https://www.cpr.org/2020/03/15/like-emergency-medicine-special-forces-colorado-doctors-and-nurses-get-ready-to-combat-coronavirus/; Morgan Lowrie, *COVID-19: Thousands of doctors, nurses rally to government call to fight coronavirus*, (Mar. 17, 2020), https://nationalpost.com/news/thousands-of-doctors-nurses-answer-call-to-help-with-covid-19-effort, (In Canada, "some provinces have begun reaching out to recently retired doctors and nurses to ask them to return to work if the pandemic worsens — and the answer is yes."); Stephen Matthews, *Government 'needs to get a move on' with plans to recall retired doctors to bolster the NHS workforce during the coronavirus outbreak, top GP warns*, (Mar. 17, 2020), https://www.dailymail.co.uk/news/article-8120653/Government-needs-plans-recall-retired-doctors.html (U.K.).

Consequently, based on the Court's discretion in managing discovery and its duty to apply Rule 26(b)(1) proportionality with attention to "whether the burden or expense of the proposed discovery outweighs the likely benefit," as stated in the rule, the Court is construing broadly the concept of the "burden" of medical discovery in civil tort cases at this particular, unprecedented point in time.  To weigh the burden of particular proposed discovery from medical providers, the Court imposes the following protocol on requests for medical treater discovery in this matter, until further order of Court:

1.	The parties shall meet and confer by telephone to discuss the number of medical treaters remaining to be deposed.  The parties shall attempt to reach agreement as to whether all of those depositions need to proceed, or whether some of them are superfluous or unnecessary. Or, alternatively, if the parties continue to be interested in settlement, they may reach an agreement to defer remaining medical provider depositions pending a settlement conference, and they shall make a report to Court as to any such agreements in a written status report on April 6, 2020.

2.	As to each such provider whose deposition is still being sought after the foregoing meet and confer, the party seeking the deposition shall disclose to the Court the following in a written document styled as a "Response to Court's Medical Provider Deposition Protocol":

	a.	The proposed deponent's name, hospital affiliation, and area of practice or specialty.

	b.	The proposed deponent's current and anticipated involvement in preparation or response to the COVID-19 public health emergency.  Counsel should obtain this information from the provider witnesses or their counsel.

c. The nature and extent of the proposed deponent's involvement in the treatment of the plaintiff or other party, including the dates of treatment and the type of treatment provided.

d. The proposed deponent's relative importance to the case, as stated by the party seeking the discovery. Such party should consider the proposed deponent's relative role in the party's treatment in comparison to other treaters whose depositions are sought. Parties should consider this portion of their protocol response as their opportunity to set forth reasons why the burden of deposing a given medical treater at this time ought not to prevent the deposition under the concept of proportionality to the needs of the case under Rule 26(b)(1).

e. The degree to which alternative avenues might be available to obtain the same discovery or sufficient discovery, including but not limited to the depositions of other witnesses, the admissibility of summary medical records by stipulation, affidavits, or Rule 31 depositions by written questions.

3. The "Response to Court's Medical Provider Deposition Protocol" shall be filed in advance of serving any subpoena on a medical provider, and the subpoena will not be permitted without order of court. If the subpoena already is served, the Response is to be filed with the Court before any deposition for a medical treater is confirmed or any notice of deposition is served. As to any depositions already noticed, the notices of deposition are to be considered vacated until the party files the Response and obtains a court order permitting the deposition.

4. A party opposing the taking of a medical treater deposition may file a "Reply As To Court's Medical Provider Deposition Protocol" within 10 days of filing of the Response, and such Reply may include or incorporate any statement(s) by medical providers or their retained counsel.

5. The Court will rule promptly on requests made to depose medical treaters under this protocol. The Court may alter or eliminate this protocol as conditions dictate.

**SO ORDERED.**

**ENTER:**

**GABRIEL A. FUENTES**
**United States Magistrate Judge**

**DATED: March 17, 2020**